## UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

TROY D. ARMSTEAD and
FRANCHUAN ARMSTEAD,

    Plaintiffs,

    v.

WILLIAM R. FELDMAN and
NASA FEDERAL CREDIT UNION,

    Defendants.

Civil Action No. TDC-19-0614

### MEMORANDUM OPINION

Plaintiffs Troy Armstead and Franchuan Armstead ("the Armsteads") have filed suit against Defendants NASA Federal Credit Union ("NASA FCU"), a federally chartered credit union, and William R. Feldman, Esq., a Maryland-licensed attorney. Feldman represents NASA FCU in a legal action in the Circuit Court for Prince George's County, Maryland to collect the balance on a 2008 loan made by NASA FCU to the Armsteads for the purchase of their residence. The Armsteads have alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p (2018), and the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201–14-204 (LexisNexis 2013). Presently pending before the Court are Feldman's Motion to Dismiss and NASA FCU's separate Motion to Dismiss. Having reviewed the operative complaint and the briefs, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motions will be GRANTED.

### BACKGROUND

The following facts are presented in the light most favorable to the Armsteads, the non-moving parties.

## I.     The Collection Action

On January 11, 2018, Feldman, representing NASA FCU, filed a lawsuit against the Armsteads ("the Collection Action") in the Circuit Court of Maryland for Prince George's County ("the Circuit Court"). *See NASA Fed. Credit Union v. Armstead*, No. CAL18-00977 (Cir. Ct. Prince George's Cty. filed Jan. 11, 2018), *available at* http://casesearch.courts. state.md.us/casesearch/. The complaint in the Collection Action and a motion for summary judgment were both docketed that day. The summonses were issued on January 24, 2018 and re-issued in April 2018 after NASA FCU was unable to effect service. On May 28, 2018, a process server, Jason Doucette, went to the Armsteads' residence in Annapolis, Maryland and encountered Franchaun Armstead ("Ms. Armstead"). When Ms. Armstead would not accept service, Doucette left the summons, the complaint, and the motion for summary judgment at the front entrance of the residence. On May 31, 2018, Feldman, on behalf of NASA FCU, filed a return of service stating that Troy Armstead ("Mr. Armstead") had been served on May 28, 2018 through substitute service upon Ms. Armstead, and he filed a second return of service on June 7, 2018 stating that Ms. Armstead had also been served on May 28, 2018 (collectively, "the Returns of Service"). In both Return of Service affidavits, Doucette stated that "When asked whether the defendant was in the military of the United States of America, the defendant replied in the negative," and that "Based upon inquiry of the party served, Defendant is married." Second Amended Complaint ("SAC") Ex. B, ECF No. 25. According to the Armsteads, the Return of Service documents contained numerous false statements, including that the process server came face-to-face with Ms. Armstead, that he delivered the summons and complaint to her, and that he asked and received the identified answers to the questions about Defendants' military service and marital status.

2

The Armsteads then filed a motion to dismiss the Collection Action based on improper service and lack of jurisdiction. In response, NASA FCU, through Feldman, filed a memorandum in opposition to the motion ("the Opposition Brief") on July 16, 2018, arguing in part that service was properly effected on May 28, 2018 when Doucette personally met Ms. Armstead face-to-face. According to the Armsteads, these and other statements in the Opposition Brief were false.

On November 14, 2018, during a hearing on the motion to dismiss, Doucette testified that on May 28, 2018, when he encountered Ms. Armstead at her doorstep and she refused to accept service, he left the papers on the ground in front of her and departed. The Circuit Court concluded that this attempted service ("the Attempted Service") was not proper under Maryland Rule 2-121 because the process server had not handed the papers to Ms. Armstead, and it was unclear whether the papers left there included the exhibits to the complaint. Nevertheless, the Circuit Court held that dismissal was not a proper remedy, and granted NASA FCU another opportunity to serve the Armsteads. When the judge asked the Armsteads' counsel whether he would accept service for his clients, he responded that he had not had a chance to talk to his clients about this issue but agreed to do so. Between December 26, 2018 and February 2, 2019, NASA FCU made multiple unsuccessful attempts to serve the Armsteads.

On April 16, 2019, NASA FCU filed a motion for alternative service, which the Circuit Court granted on June 17, 2019. Pursuant to the Circuit Court's ruling, service was completed on July 5, 2019 by mailing the complaint to the Armsteads' address and posting a copy on the Armsteads' door. The Armsteads allege, and Defendants do not dispute, that a copy of the motion for summary judgment was also served with the complaint.

## II.     Procedural History

On June 4, 2019, the Armsteads filed the original Complaint in this case, which was amended on July 15, 2019 and for a second time on December 20, 2019 ("the Second Amended Complaint"). In the Second Amended Complaint, the Armsteads allege four counts, each asserting causes of action under both the FDCPA and the MCDCA. In Count I, the Armsteads allege that Defendants violated the FDCPA by filing, on May 31, 2018, two Returns of Service in the Collection Action which contained false statements about the Attempted Service and falsely claimed that the Armsteads had been properly served, in violation of 15 U.S.C. § 1692e, which bars the making of false and misleading representations in the collection of a debt, and 15 U.S.C. § 1692f, which bars unfair or unconscionable practices in debt collection. In Count II, the Armsteads allege that the Opposition Brief, filed on July 13, 2018, also violated § 1692e because it contained similar false and misleading statements relating to the Attempted Service. In Count III, the Armsteads allege that the Attempted Service on May 28, 2018 violated § 1692f because when the process server left only part of the Collection Action complaint on the ground in front of Ms. Armstead, in that the complaint's exhibits were not attached, Defendants had engaged in an unfair or unconscionable attempt to collect a debt. Finally, in Count IV, the Armsteads allege that on or about July 5, 2019, when Defendants, in effecting the alternative service authorized by the Circuit Court, served a copy of the motion for summary judgment along with the Collection Action complaint upon the Armsteads rather than on their known counsel, they violated 15 U.S.C. § 1692c(a), which provides that a "debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt," absent the express permission of a court, the prior consent of the debtor or the attorney, or a failure of the attorney to respond within a reasonable

4

period of time to a communication from the debt collector. In all four counts, the Armsteads allege that the same conduct underlying the FDCPA claims also violated the MCDCA.

## DISCUSSION

Defendants seek dismissal of the Second Amended Complaint for failure to state a claim pursuant to the Federal Rule of Civil Procedure 12(b)(6). They argue that: (1) the FDCPA claims in Count I, II, and III are barred by the applicable one-year statute of limitations; (2) because a process servicer is not a "debt collector" under the FDCPA, Defendants cannot be vicariously liable under the FDCPA for the actions of the process server underlying Counts I, II, and III; (3) the FDCPA claims fail because the Armsteads have not alleged facts establishing that the debt qualifies as a consumer debt pursuant to the statute; and (4) all four counts fail because the facts alleged do not support a plausible claim for relief under the relevant provisions of the FDCPA. Defendants also argue that because the Armsteads' MCDCA claims are based solely on the subsection of that statute providing that conduct violating the FDCPA also violates the MCDCA, where every FDCPA claim is subject to dismissal, the MCDCA claims must also be dismissed. Finally, NASA FCU separately argues that the FDCPA claims against it fail because it is not a "debt collector" as defined in that statute.

## I.     Legal Standards

### A.     Rule 12(b)(6)

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable

5

to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

In resolving a Rule 12(b)(6) motion, Courts are permitted to consider a document attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Courts may also consider facts and documents subject to judicial notice without converting a motion to dismiss into a motion for summary judgment. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013). "Under this exception, courts may consider 'relevant facts obtained from the public record,' so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint." *Id.* (quoting *B.H. Papasan v. Allain*, 578 U.S. 265, 283 (1986)); *see also* Fed. R. Evid. 201(b) (permitting a court to take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). Where both parties have submitted with their briefs various court orders, filings, and transcripts from the Collection Action, and there has been no challenge to their authenticity, the Court will take judicial notice of those state court proceedings and consider them in resolving the Motion.

## B.    FDCPA

The FDCPA's essential purpose is to prevent "abusive, deceptive, and unfair debt collection practices," 15 U.S.C. § 1692(a), by prohibiting debt collectors "from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) (internal citation omitted). To state a valid FDCPA claim, the

Armsteads must plausibly allege that (1) Defendants are debt collectors as defined by the FDCPA; (2) the Armsteads were the "object of collection activity" arising from a consumer debt, such as a communication in connection with the collection of an outstanding debt; and (3) Defendants have engaged in an act or omission prohibited by the FDCPA. *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 333 n.3 (4th Cir. 2012); *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012).

### C.   MCDCA

The MCDCA provides a state law cause of action for damages to enforce prohibitions on certain conduct in the course of debt collection relating to consumer transactions. Md. Code Ann., Com. Law §§ 14-201 to 14-203. As relevant here, the MCDCA provides that "[i]n collecting or attempting to collect an alleged debt a collector may not . . . [e]ngage in conduct that violates §§ 804 through 812 of the [FDCPA]." Md. Code Ann., Com. Law § 14-202(11). Sections 804 to 812 of the FDCPA include 15 U.S.C. § 1692e (Section 807), 15 U.S.C. § 1692f (Section 808), and 15 U.S.C. § 1592c(a) (Section 805).

## II.   Statute of Limitations

Defendants argue that Counts I, II, and III are time-barred by the FDCPA's one-year statute of limitations. In advancing this claim, Defendants do not dispute that Count IV was timely filed or that the MCDCA claims are subject to Maryland's three-year statute of limitations for civil claims. *See* Md. Cts. & Jud. Proc. § 5-101 (LexisNexis 2013).

The FDCPA has a one-year statute of limitations, running "from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Defendants correctly state that, based on this language, the FDCPA's statute of limitations "begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered." *Rotkiske v. Klemm,* 140 S. Ct.

7

355, 357 (2019). Count I is based on the filing in the Collection Action of the Return of Service affidavits with allegedly false statements on May 31, 2018. Count III is based on the failure to attach the complaint's exhibits to the copy of the Collection Action complaint left by the process server with Ms. Armstead on May 28, 2018. Where the present lawsuit was initiated on June 4, 2018, the Court finds that the FDCPA claim in Count III is time-barred. As to Count I, while the Return of Service relating to Mr. Armstead was filed on May 31, 2018, the state court docket reflects that the Return of Service relating to Ms. Armstead was actually filed on June 7, 2018. Accordingly, only the claim in Count I relating to the service on Mr. Armstead is time-barred.

Defendants further argue that the FDCPA claim in Count II, based on the filing of the Opposition Brief on July 13, 2018, is also time-barred because the limitations period runs from the first of a series of communications in violation of the FDCPA that seek to collect on the same debt, and later violations do not reset the limitations period. Under this theory, the statute of limitations began to run on May 28, 2018, upon the first alleged violation of the FDCPA relating to the same debt. Although Defendants rely on various cases applying this theory, the United States Court of Appeals for the Fourth Circuit recently rejected that reasoning and held that § 1692k(d) "establishes a separate one-year limitations period for each violation of the FDCPA" because "nothing in the FDCPA suggests that 'similar' violations should be grouped together and treated as a single claim for purposes of the FDCPA's statute of limitations." *Bender v. Elmore & Throop, P.C.*, 963 F.3d 403, 407 (4th Cir. 2020); *see Mitchell v. U.S. Bank Nat'l Ass'n as Tr. for Mastr Asset Backed Sec. Tr. 2005-FRE1*, No. TDC-19-2225, 2020 WL 3050739, at *9-10 (D. Md. June 8, 2020) (holding that separate communications from a debt collector, even relating to the same debt, each constitute a separate FDCPA violation, and the statute of limitations for each such offense runs from the date of that communication). Therefore, the statute of limitations for Count

II began to run on July 13, 2018, the date the Opposition Brief was filed, such that Count II is not time-barred. *See Bender*, 963 F.3d at 407-08; *Mitchell*, 2020 WL 3050739, at \*9. Likewise, the claim in Count I based on the Return of Service relating to Ms. Armstead, which dates to June 7, 2018, is not time-barred.

## III.   Debt Collector

### A.   NASA FCU

#### 1.   FDCPA

NASA FCU argues that it is not subject to the FDCPA because it is excluded from the statute's covered entities. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Excluded from the definition of a debt collector is "any person collecting or attempting to collect any debt owed or due . . . which was originated by such person." 15 U.S.C. § 1692a(6)(F)(ii). Therefore, in determining whether an individual or entity qualifies as a debt collector under the FDCPA, "[a]ll that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for another." *Henson v. Santander Consumer USA Inc.,* 137 S. Ct. 1718, 1721-22 (2017). The parties do not dispute that NASA FCU originated the loan at issue in the Collection Action.

Where NASA FCU is attempting to collect on a debt it originated, the Court finds that it is not a "debt collector" under the FDCPA. *See id.* (holding that when an entity acts to collect its own debts, it is acting as a creditor, not a debt collector, and is not subject to the FDCPA). Moreover, because NASA FCU is not a debt collector, it cannot be liable under the FDCPA for

the actions of its attorney, Feldman. *See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103,

108 (6th Cir. 1996); *Ramsay v. Sawyer Prop. Mgmt. of Md., LLC*, 948 F. Supp. 2d 525, 533 (D.

Md. 2013), *aff'd,* 593 F. App'x 204 (4th Cir. 2014); *Fontell v. Hassett*, 870 F. Supp. 2d 395, 412

(D. Md. 2012). The Court therefore grants the Motion filed by NASA FCU as to all remaining

FDCPA claims against it.

### 2.   MCDCA

NASA FCU further argues that because it does not qualify as a "debt collector" under the

FDCPA and cannot be held liable under that statute, and because the MCDCA claims are based

on the subsection providing that conduct violating the FDCPA also violates the MCDCA, the

MCDCA claims necessarily fail as well. The Armsteads have alleged that Defendants are liable

under the MCDCA provision which states that "[i]n collecting or attempting to collect an alleged

debt a collector may not . . . [e]ngage in any conduct that violates §§ 804 through 812 of the federal

Fair Debt Collection Practices Act." Md. Code Ann., Com. Law § 14-202(11). These sections

include 15 U.S.C. § 1692e, 15 U.S.C. § 1692f, and 15 U.S.C. § 19692c, the FDCPA sections at

issue in this case.

Significantly, section 14-202(11) does not simply state that any violation of the FDCPA is

also a violation of the MCDCA. As a matter of the plain language of section 14-202, while the

MCDCA incorporates prohibited conduct under the FDCPA, the statute explicitly applies to the

actions of a "collector," which is defined broadly under the MCDCA as a "person collecting or

attempting to collect an alleged debt arising out of a consumer transaction." Md. Code Ann., Com.

Law § 14-201(b). This term encompasses a broader range of actors than the term "debt collector"

under the FDCPA and would include a creditor such as NASA FCU that does not meet the federal

definition of "debt collector." *See* 15 U.S.C. § 1692a(6). Where the statutory text provides that

the MCDCA specifically uses the term "collectors" to refer to the entities and parties who can be held liable for engaging in "conduct" that violates certain sections within the FDCPA, the Court finds that violations under § 14-202(11) are measured based on the actions that would violate the FDCPA but apply to this broader set of actors covered under the MCDCA.  Thus, the Court finds that the MCDCA prohibits "collectors" such as NASA FCU from engaging in the type of conduct described in the relevant provisions of the FDCPA, such as using "false, deceptive, or misleading representations or means" in connection with debt collection, 15 U.S.C. § 1692e, using "unfair or unconscionable means" to collect a debt, 15 U.S.C. § 1692f, or communicating "with a consumer in connection with the collection of any debt" knowing that "the consumer is represented by an attorney with respect to such debt," 15 U.S.C. § 1692c(a).  Because NASA FCU has not established that it is not a "collector" under the MCDCA, the Court will not dismiss the MCDCA claims against it.

### B.    Feldman

Feldman does not dispute that he qualifies as a "debt collector" under the FDCPA, as he regularly engages in consumer debt collection activity, and attorneys who do so can be held liable for FDCPA violations, including based on litigation activities. *See Heintz*, 514 U.S. at 299; *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 230-231 (4th Cir. 2007) (holding that attorneys can be liable under the FDCPA for statements made in a court filing such as a motion for summary judgment).  He nevertheless claims that the FDCPA claims against him in Counts I, II, and III fail because a process server is not a "debt collector" under the FDCPA, and he cannot be held vicariously liable for the actions of a process server.  Although process servers are excluded from the definition of "debt collector," *see* 15 U.S.C. § 1692a(6)(D), the Armsteads correctly argue that their theory of liability on Count I is predicated not on the actions of the process server in providing

11

false information in the return of service affidavits, but on Feldman's act of filing those documents in the Collection Action. Likewise, the theory in Count II is that Feldman made false assertions in the Opposition Brief about the Attempted Service, and that claim is based solely on the actions taken by Feldman as counsel in the Collection Action. Where the FDCPA claim in Count III will be dismissed as time-barred, the Court need not address it here. Accordingly, the fact that the process server is not a "debt collector" is not relevant and does not provide a basis for dismissal of the FDCPA claims against Feldman.

## IV.   Consumer Debt

Feldman also argues that the Armsteads' claims must be dismissed because the Second Amended Complaint is "completely devoid" of factual allegations that the debt in question in the Collection Action was a "debt" under the FDCPA, Feldman Mot. Dismiss First Am. Compl. ("Feldman Mot. Dismiss FAC") at 8, ECF No. 15-1, which consists of "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The Armsteads, however, explicitly state that the loan at issue "was made by NASA [FCU] to the Armsteads for the purpose of purchasing their residence, and in fact the Armsteads used the loan to purchase the property that they occupied as their residence immediately following the purchase of it with the loan proceeds." SAC ¶ 13. A loan on a debtor's residence is a "debt" for purposes of the FDCPA. *See Smith v. EVB*, 438 F. App'x 176, 177, 179 (4th Cir. 2011) (holding that a loan used to pay off an existing loan on the plaintiff's personal residence was a "personal loan" and therefore covered by the FDCPA). Where, at this stage, all reasonable inferences are to be drawn in favor of the non-moving party, the Court finds that the Armsteads have sufficiently

12

alleged that the loan at issue in the Collection Action was a personal, consumer "debt" subject to the FDCPA.  15 U.S.C. § 1692a(5).

## V.   Prohibited Acts

Finally, the Armsteads must have sufficiently shown that the Defendants engaged in an act or omission prohibited by the FDCPA. *Boosahda*, 462 F. App'x at 333 n.3; *Stewart*, 859 F. Supp. 2d at 759.  Although the Court will dismiss all FDCPA claims against NASA FCU, and the FDCPA claim in Count III against Feldman, because the MCDCA claims based on conduct violating the FDCPA remain against both Defendants, the Court must consider this issue as to all four counts.

### A.   Count I

Based on the preceding analysis, the remaining parts of Count I are the FDCPA claim against Feldman based on the June 7, 2018 Return of Service filing relating to Ms. Armstead and the MCDCA claims against both Defendants.  In Count I, the Armsteads allege that by filing the Return of Service affidavits falsely claiming that the process server had delivered the summonses and the complaint to the Armsteads, had explained their contents to them, and had asked and received answers to certain questions about their military and marital status, Defendants engaged in conduct violating 15 U.S.C. § 1692e, which prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

Because "[w]hether certain statements are false, misleading, or deceptive in violation of § 1692e is determined from the vantage of the 'least sophisticated consumer,' . . . [a] logical corollary of the . . . test is that false, deceptive, and misleading statements must be *material* to be actionable." *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014)  (internal citations omitted).  Thus, the Fourth Circuit has construed § 1692e to require that, when viewed "in context,"

13

the false or misleading representation must be "material" to the debt at issue in that it "could objectively affect the least sophisticated consumer's decisionmaking." *Elyazidi v. SunTrust Bank*, 780 F.3d 227, 234 (4th Cir. 2015) (citations omitted). Courts should not be "concerned with mere technical falsehoods that mislead no one." *Powell*, 782 F.3d at 126 (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010)).

Under this requirement, an Assignment of Judgment filed in court that falsely overstated the amount a debtor still owed on a loan by $3,930 was deemed to be a "material" false statement actionable under the FDCPA because it would have been important to the consumer in deciding how to respond to the debt collection efforts. *See id.* at 127. However, a misrepresentation is not material when it has "no connection to the debt at issue in this case." *Lembach v. Bierman*, 528 F. App'x 297, 303 (4th Cir. 2013). For example, in *Lembach*, the court concluded that fraudulent signatures on documents initiating a foreclosure proceeding, affixed by someone other than the trustee whose signature was required to file a foreclosure action, were not material because they had no connection to the debt itself. *Id.*

Here, the process server maintains that he delivered the papers to Ms. Armstead by leaving them on the ground in front of her when she refused to accept them, and that he did not carefully read the standard information in the return of service forms, including the language relating to the process server having described the contents of the papers and elicited information about military and marital status, before signing them. Even if the Court assumes that these forms contained false statements, they were not material in that they were not connected to the debt at issue. They were not statements about the validity of the debt, or statements about the amount still owed, as in *Powell*. 782 F.3d at 127. Rather, where they relate only to the issue of whether service was proper, they are even more tangential than the fraudulent signatures on foreclosure filings in *Lembach*,

14

which were deemed not material and therefore not actionable under the FDCPA. *See Lembach*, 528 F. App'x at 303. Although the Armsteads assert that the Returns of Service would make a debtor more likely to resolve a disputed debt because they might believe that there was a valid, pending case against them, that argument cannot be squared with *Lembach*, in which genuine signatures were necessary to initiate a valid foreclosure action but the fraudulent signatures were nevertheless not material. *See id.* Moreover, because they relate to an in-person encounter between the process server and Ms. Armstead, of which she had first-hand knowledge, the statements could not be deemed to have deceived, and therefore influenced, Defendants in their actions relating to the debt. The Court therefore finds that the alleged false statements were not material and therefore not of a nature that renders them actionable under § 1692e.

Likewise, the Court finds that these same alleged false statements do not support the Armsteads' claim that the filing of the Return of Service forms constituted the use of "unfair or unconscionable means to collect or attempt to collect any debt" under 15 U.S.C. § 1692f. As the Fourth Circuit has observed, § 1692f prohibits eight enumerated activities of unfair or unconscionable practices all of which "have in common . . . the capacity to harass the debtor or to pressure [the debtor] to pay the debt." *Elyazidi*, 780 F.3d at 236. None of those specific actions are at issue here. Moreover, in *Elyazidi*, the court rejected an argument that the filing in court of exhibits containing the debtor's social security number could constitute harassment or pressure to pay the debt rather than risk identity theft because "[w]hile, conceivably, a threat to expose one's social security number might pressure a debtor to pay off a debt," no such explicit threat was made, and where the exposure "occurred in the course of litigation and was easily remedied" by requesting that the court order the redaction of the social security number, the disclosure cannot be considered unfair or unconscionable. *Elyazidi*, 780 F.3d at 236.

Here, there likewise was no overt threat or act of harassment associated with the filing of the Returns of Service. Indeed, because the question of whether leaving the summons and complaint on the ground constituted proper service when Ms. Armstead refused to accept them was the subject of a legitimate legal dispute before the Circuit Court, there was nothing unfair or unconscionable about an assertion that the relevant papers had been delivered to her. As for the misstatements in the Returns of Service about conversations with Ms. Armstead, as in *Elyazidi*, the Armsteads could, and did in fact, seek relief from the court to address them and to remedy the improper service. Under these circumstances, the Court finds that the filing of the Returns of Service were not an unfair or unconscionable means of debt collection under the FDCPA. *See id.* The Court therefore concludes that the Armsteads have failed to state a valid claim for relief under the FDCPA in Count I.

Because the Armsteads have failed to allege conduct by Defendants that violates the FDCPA, the Court necessarily finds that they have failed to allege a plausible claim under the MCDCA. *See* Md. Code Ann., Com. Law § 14-202(11). Count I will be dismissed in its entirety.

**B.    Count II**

For similar reasons, Count II fails to plausibly allege that Defendants engaged in activity prohibited under the FDCPA. In Count II, the Armsteads allege that Feldman violated § 1692e only, based on three allegedly false, misleading, or deceptive statements in the Opposition Brief. The first statement was that the Armsteads "were served on May 28, 2018 with the reissued summons and complaint" when the process server "personally served Franchaun, and served Troy Armstead via substitute service by serving his wife, Franchaun Armstead." Collection Action Opp'n Mot. Dismiss at 2, Feldman Reply Mot. Dismiss SAC Ex. 2, ECF No. 30-2. The second was a recounting of the statement in the process server's affidavit that the process server "came

face to face with Franchaun Armstead directly outside her residence." *Id.* at 3. The final statement at issue is the claim that, based on language in the Armsteads' motion to dismiss in the Collection Action, the Armsteads "admit that even partially defective service is 'insufficient to serve as grounds for dismissal of this action.'" SAC ¶ 37 (quoting Collection Action Opp'n Mot. Dismiss at 5-6).

None of these statements support a plausible claim under § 1692e. The first two statements do not even qualify as false statements. The first, the assertion that the process server "personally served" Ms. Armstead, offers not a factual statement, but a legal conclusion on the question before the Circuit Court on the motion to dismiss, whether the steps taken by the process server qualified as personal service. The statement that the process server came face-to-face with Ms. Armstead is undisputedly factually accurate, regardless of whether the process server had confirmed her identity before or during that confrontation. The Armsteads are, however, correct that the third statement in the Opposition Brief is false, as Feldman misquotes a sentence contained in the Armsteads' motion to dismiss in the Collection Action. In that motion, the Armsteads stated, "While improper service by itself is *sufficient* to serve as grounds for dismissal of this action, the failure to complete service must also lead to dismissal for lack of jurisdiction under Md. Rule 2-507(b)." Collection Action Mot. Dismiss at 2, Feldman Reply Mot. Dismiss SAC Ex. 1, ECF No. 30-1 (emphasis added). In the Opposition Brief, Feldman inaccurately claimed that the Armsteads stated in that same sentence, "While improper service by itself is *insufficient* to serve as grounds for dismissal of this action, the failure to complete service must also lead to dismissal for lack of jurisdiction under Md. Rule 2-507(b)." Collection Action Opp'n Mot. Dismiss at 5-6 (emphasis added).

But even if all of the alleged statements were false, none of them constitute a representation that violates § 1692e because none are material to the debt at issue. *See Powell*, 782 F.3d at 126. The first two statements, like the statements at issue in Count I, relate to the Attempted Service and do not relate to the debt itself. For the same reasons that the Count I statements were not material, these statements are also not material. *See supra* part V.A.; *Lembach*, 528 F. App'x at 303. The third statement asserted only that the Armsteads' counsel had conceded a legal point about the impact of failed service and likewise was not material because it had no connection to the debt. Moreover, the third statement—indeed, all three—was made in a brief opposing a motion to dismiss in the Collection Action and was primarily directed to the Circuit Court, not the consumer, in an effort to convince that court to deny the motion. Under those circumstances, it is not material because it cannot fairly be construed as affecting even the least sophisticated consumer's decisionmaking relating to the debt. *See Powell*, 782 F.3d at 126.

Because the Court finds that the allegedly false and misleading statements in the Opposition Brief were not material false statements under § 1692e, the Armsteads have failed to assert a plausible claim under either FDCPA or the MCDCA. 15 U.S.C. § 1692e; Md. Code Ann., Com. Law § 14-202(11). The Court will grant the Motions as to Count II.

### C.    Count III

In Count III, the only remaining claim is the MCDCA claim. The Armsteads allege that the Attempted Service of the Collection Action complaint without including any of the referenced exhibits was an "unfair or unconscionable means to collect or attempt to collect any debt" and therefore violated the FDCPA, 15 U.S.C. § 1692f, and by extension, the MCDCA, Md. Code Ann., Com. Law § 14-202(11). As with Count I, this conduct does not fall within any of the non-exclusive list of unfair and unconscionable actions identified in the statute. 15 U.S.C. § 1692f. It

18

also does not otherwise assert a plausible claim that the failure to include the exhibits had "the capacity to harass the debtor" or to "pressure" the debtor to pay the debt. *Elyazidi*, 780 F.3d at 236. Even beyond the obvious flaw in the claim that the Armsteads have consistently denied that the Attempted Service successfully transmitted the Collection Action complaint to them, the Armsteads have not alleged any particular information about the content of the missing exhibits or how the failure to include them presented an unfair picture of the debt or NASA FCU's claim that could be construed as effectively imposing such harassment or pressure. Even if they could do so, the lack of exhibits with the papers unsuccessfully served upon the Armsteads was of no consequence because Defendants mailed and securely emailed copies of the exhibits to the Armsteads' counsel no later than July 13, 2018, even before the issue of improper service was resolved, such that the failure to include them cannot fairly be deemed to have been unfair or unconscionable. The Court will grant the Motions as to the MCDCA claim in Count III.

**D.     Count IV**

Finally, the Armsteads allege in Count IV that when Defendants effectuated alternative service in July 2019 by mail and by posting at the Armsteads' residence, in which they provided the summonses, the complaint, and the motion for summary judgment, they violated the FDCPA by communicating directly with the Armsteads, despite knowing that they were represented by an attorney. Under the relevant FDCPA provision, as applicable here:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt . . . unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

15 U.S.C. § 1692c(a).

Feldman argues that the Armsteads' counsel implicitly consented to his clients' receipt of communications from Feldman and NASA FCU when, in response to a question from the Circuit Court during the hearing on the motion to dismiss the Collection Action on whether counsel was willing to accept service on behalf of his clients, he refused. Upon review of the cited exchange, however, the Court notes that at no point did the Armsteads' counsel, Ernest Francis, "refuse to accept service" or assert that "he was not authorized by his clients to accept service on their behalf," as claimed by Defendants. Feldman Mot. Dismiss FAC at 21. Rather, in response to the Circuit Court's question whether counsel was "willing to accept service or not," Francis responded, "I have not had a chance to talk to my clients" and stated that he could speak to his clients about the issue. Collection Action Mot. Dismiss Hrg. Tr. at 46, Feldman Mot. Dismiss FAC Ex. 2, ECF No. 15-3. The Circuit Court then stated that if counsel would not accept service, it "expect[ed] fully that Mr. and Ms. Armstead will accept service" and if they did not, after one more attempt at service, the court would consider a motion for alternative service. *Id.* at 47. Where Francis neither consented to direct service upon his clients nor refused to accept service on their behalf, the record is more properly viewed as potentially supporting an argument that direct contact was permitted because the Armsteads' counsel "fail[ed] to respond within a reasonable period of time to a communication from the debt collector." *See* 15 U.SC. § 1692c(a). The Court, however, need not analyze this particular exception because it finds that the service upon the Armsteads was proper based on "the express permission of a court of competent jurisdiction." *Id.*

After the Circuit Court, upon granting the motion to dismiss for improper service in the Collection Action, directed NASA FCU to properly serve the Armsteads, NASA FCU subsequently provided proof that the Armsteads had "acted to evade service" again. Collection Action Order at 1, Opp'n Mot. Dismiss Ex. A, ECF No. 29-1. In an order granting NASA FCU's

20

motion for alternative service, the Circuit Court directed that "service shall be made by posting a copy of the Complaint on the door of the [Armsteads'] residence and mailing a copy to the [Armsteads'] last known address." *Id.* Thus, Defendants were directly authorized to "communicate with [the Armsteads] in connection with the collection of any debt." 15 U.S.C. § 1692c(a).

The Armsteads argue that because the order refers only to the posting of the complaint, Feldman lacked express permission to serve any other documents directly upon the Armsteads. As Feldman accurately notes, however, Maryland law provides that "[s]ervice of process may be made . . . by delivering to the person to be served a copy of the summons, complaint, and *all other papers filed with it*." Md. Rule 2-121(a) (LexisNexis 2020). Because service of process without providing a copy of the summons could not be deemed proper, the Circuit Court's order can only fairly be read to permit service of the materials identified in Md. Rule 2-121. As the docket in the Collection Action reflects, the complaint and the motion for summary judgment were filed on the same day. Feldman's original attempts to serve the Armsteads included the summons, complaint, motion for summary judgment, and supporting documents. Thus, where the Circuit Court gave explicit permission to serve the Armsteads through alternative means because of a demonstrated pattern of evasion of service, the controlling Maryland service rules provide that the complaint may be served with the summons and all other papers filed with the complaint, and the motion for summary judgment was originally filed with the complaint, the Court finds that Feldman did not violate § 1692c(a). *See Holcomb v. Freedman Anselmo Lindberg, LLC*, 900 F.3d 990, 995 (7th Cir. 2018) (holding that there is no FDCPA violation where state rules permit a party to send a motion directly to the consumer). The Court therefore will grant the Motions as to Count IV.

**CONCLUSION**

For the foregoing reasons, Defendants' Motions to Dismiss will be GRANTED.  A separate

Order shall issue.


Date: August 17, 2020



THEODORE D. CHUANG
United States District Judge